**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| TODD FRANKLIN,                )<br>                                              )<br>            **Plaintiff,**        )<br>                                              )     **CIVIL ACTION**<br>v.                                         )<br>                                              )     No. 14-1132-JWL<br>CAROLYN W. COLVIN,      )<br>Acting Commissioner of Social Security,  )<br>                                              )<br>            **Defendant.**      )<br>_____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the administrative law judge's (ALJ) evaluation of the medical opinions, the court ORDERS that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

**I.      Background**

Plaintiff applied for DIB and SSI, alleging disability beginning December 18, 2000. (R. 12, 179-82). He exhausted proceedings before the Commissioner, and now

seeks judicial review of the final decision denying benefits.  Plaintiff alleges the ALJ erred in his residual functional capacity (RFC) assessment by improperly applying Dr. Hough's medical opinion and by erring in the relative weighing of Dr. Hough's and Dr. Blum's opinions.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ failed to adequately explain his evaluation of the medical opinions.

## II.    Evaluation of the Medical Opinions

Plaintiff points out that the ALJ accorded significant weight to Dr. Hough's non-treating source opinion--that it is unlikely Plaintiff would be able to relate adequately to supervisors because of his paranoia. (Pl. Br. 8) (citing R. 21). He notes that the ALJ assessed a limitation to no more than occasional contact with the public and with coworkers, but assessed no limitation relating to supervisors. Id. (citing R. 18). He argues that the limitation the ALJ assessed is contrary to Dr. Hough's opinion to which the ALJ accorded significant weight, and that this constitutes error because the ALJ explained neither how this ambiguity or material inconsistency was considered and resolved nor why Dr. Hough's opinion in this regard was not adopted. He also argues that the ALJ erred in according greater weight to Dr. Blum's non-examining source opinion because Dr. Hough's opinion was supported by Dr. Barnett's non-treating source opinion. (Pl. Br. 14).

The Commissioner argues that the ALJ reasonably considered the regulatory factors for weighing medical opinions "with respect to Dr. Hough, Dr. Barnett, and Dr.

Blum, and found that on balance, Dr. Blum's opinion was entitled to the greatest weight." (Comm'r Br. 5) (citing R. 19-22). She points to record evidence supporting the ALJ's determination to accord significant weight to Dr. Blum's opinion, and argues that "the ALJ reasonably gave [Dr. Hough's] opinion less weight after weighing it against Dr. Hough's own findings and the other evidence of record." Id. at 7. The Commissioner acknowledges that "the ALJ also gave some aspects of Dr. Hough's opinion greater weight, i.e., with respect to Plaintiff being capable of remembering and understanding simple instructions, [with respect to] his limited ability to maintain appropriate social interactions, as well as [with respect to] some limitations regarding persistence and pace." Id. at 8. But, she argues that although the decision indicates that the ALJ meant to accord significant weight to Dr. Hough's opinion regarding simple instructions and limited social interaction, it also indicates that he did not mean to accord significant weight to Dr. Hough's limitation regarding supervisors. Id. at 9. She acknowledges Dr. Barnett's opinion providing a diagnosis of cognitive disorder and a full scale IQ score of 52, but argues that it was reasonable for the ALJ to defer to Dr. Blum's opinion "regarding Dr. Barnett's testing, particularly when Dr. Blum gave several sound reasons to support his conclusions (which the ALJ then noted in his decision)." (Comm'r Br. 10).

### A. Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [the claimant's] symptoms, diagnosis and prognosis."

5

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such opinions[1] may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated in accordance with factors contained in the regulations. Id. §§ 404.1527(c), 416.927(c) (effective March 26, 2012); <u>Soc. Sec. Ruling</u> (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2014). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6). After considering the factors, the ALJ must give reasons in the decision for the weight he gives the opinion. Id.

    An ALJ's decision must include a narrative discussion explaining how any ambiguities and material inconsistencies in the evidence were considered and resolved.

---

[1]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
    "Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
    "Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2014). If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt that opinion. Id. at 150.

### B.     The ALJ's Determination

In the ALJ's narrative discussion of his RFC assessment he summarized the record evidence, including the reports of examinations provided by Dr. Hough and Dr. Barnett.

> During Dr. Hough's examination in June 2011, the claimant reportedly made multiple mistakes when counting backwards from 21 (Ex. 7F, p.4 [R. 448]). He also reported the claimant's two-digit addition and subtraction was "very inaccurate," and he noted the claimant was unable to spell "world" backwards (Ex. 7F, p.4 [R. 448]). However, the claimant was able to repeat three digits forwards and three digits backwards, recall three out of three words immediately and three out of three words after five minutes with prompts (Ex. 7F, p.4 [R. 448]). The claimant was also able to name the current President, the number of months in a year, and the direction in which the sun rises (Ex. 7F, p.4 [R. 448]). Dr. Hough reported the claimant did not exhibit difficulty finding words and was capable of adequate expression (Ex. 7F, p.3 [R. 447]). The claimant was also reportedly able to track and comprehend as well as follow one and two-step verbal directions (Ex. 7F, p.3 [R. 447]).
>
> \* \* \*
>
> In October 2011, Dr. Barnett tested the claimant's cognitive abilities using the Wechsler Memory Scale – IV (WMS), the Minnesota Multiphasic Personality Inventory – II (MMPI), Trails A & B, and the Wechsler Adult Intelligence Scale – IV (WAlS) (Ex. 9F [R. 479-82]). Reportedly valid test results showed the claimant has a Verbal Comprehension IQ of 66, a Perceptual Reasoning IQ of 54, and a Full Scale lQ of 52 (Ex. 9F, p.3 [R. 481]). Dr. Barnett noted the claimant was easily confused and opined that the claimant did not appear capable of managing his own funds (Ex. 9F [R. 479-82]).
>
> Nonetheless, Dr. Barnett's report does not include an explanation for the test results or their meaning and are, thus, questionable. Robert H. Blum,

> Ph.D., a State agency psychologist, indicated the claimant's poor performance on Trails testing suggests cognitive deficits (Ex. 7A, p. 9 [R. 86]). However, Dr. Blum noted that, after reviewing the MMPI validity scales, "it would appear as though the claimant is exaggerating his symptoms" (Ex. 7A, p. 9 [R. 86]). Additionally, upon discharge from the emergency room in 2003, a survey indicated the claimant has no barriers to learning (Ex. 15F, p.41 [R. 532]).

(R. 19-20).

The ALJ explained the bases for the mental limitations in his RFC assessment and immediately thereafter, explained the weight accorded to the medical opinions of Dr. Hough and Dr. Blum:

> A review of the limitations resulting from the claimant's impairments indicates that they are "severe," and require a reduction of the residual functional capacity. I have accommodated the claimant's moderate difficulties in maintaining concentration, persistence and pace by limiting him to unskilled work. Additionally, the claimant should not perform high production rate jobs, although low and medium rate jobs are acceptable. Secondary to his moderate difficulties in social functioning, the claimant is limited to no more than occasional contact with the public and coworkers. The claimant's assertions related to his inability to function due to mental deficits have been considered, but are not given great weight because the medical record does not support his allegations.
>
> In making this finding, I considered Dr. Hough's opinion that the claimant is unable to maintain adequate concentration, persistence, or pace necessary to engage in simple unskilled work at a competitive level throughout an 8-hour workday (Ex. 7F, p.6 [R. 450]). I assign little weight to this opinion because it is inconsistent with the claimant's ability to perform light household chores, help care for his child, and track and comprehend well throughout the interview.
>
> Dr. Hough also opined that the claimant is capable of remembering and understanding simple instructions, but his ability to maintain appropriate social interactions is "very limited" and he could not adequately relate to supervisors (Ex. 7F, p.6 [R. 450]). I assign significant weight to this opinion because it is consistent with the claimant's ability to follow one and

> two-step verbal directions as well as the claimant's preference for social isolation.
>
> Dr. Blum opined that the claimant is capable of understanding and remembering simple instructions as well as performing simple tasks (Ex. 7A [R. 78-92]). Dr. Blum also opined that the claimant has difficulty working with the public but is capable of acting appropriately with others (Ex. 7A [R. 78-92]).  I assign significant weight to these opinions because they are consistent with the claimant's ability to perform personal care without difficulty, cook simple meals, and occasionally shop.

(R. 21-22).

### C.    Analysis

As Plaintiff argues, the ALJ assigned little weight to Dr. Hough's opinion that Plaintiff is unable to maintain adequate concentration, persistence, and pace throughout a workday, but significant weight to Dr. Hough's opinion that Plaintiff's ability to maintain appropriate social interactions is "very limited" and he could not adequately relate to supervisors.  And, as Plaintiff also points out, the ALJ found him "limited to no more than occasional contact with the public and coworkers," but, beyond according significant weight to Dr. Hough's opinion in that regard, said nothing about Plaintiff's ability to relate to supervisors.  The nearest thing to a discussion on that contradiction is the ALJ's determination also to accord significant weight to Dr. Blum's opinion that Plaintiff has difficulty working with the public but is capable of acting appropriately with others.  This does nothing to resolve the conflict or ambiguity, it merely deepens it--the ALJ has purportedly assigned equal ("significant") weight to two opinions which are diametrically in conflict.

The Commissioner attempts to resolve the ambiguity by arguing that the facts that the ALJ used Dr. Blum's opinion in assessing the RFC limitation, and that he accorded significant weight to Dr. Blum's opinion immediately after he assigned significant weight to Dr. Hough's opinion will suffice as a "close reading" of the decision and "indicate the ALJ meant to give significant weight to Dr. Hough's opinion regarding simple instructions and limited social interaction, but not his additional limitation regarding supervisors."  (Comm'r Br. 9).  As quoted above, the language used by the ALJ ("but his ability to maintain appropriate social interactions is "very limited" and he could not adequately relate to supervisors"), will not bear the interpretation suggested by the Commissioner.  In the decision, the ALJ tied "'very limited' social interactions" and "inadequate relation to supervisors" securely together with the conjunction "and," and they cannot be torn apart to accord significant weight to one but not the other without doing extreme damage to the English language.

The fact that the ALJ used Dr. Blum's opinion instead of Dr. Hough's opinion in the formulation of his RFC assessment surely leads one to believe that the ALJ meant to give greater weight to Dr. Blum's opinion.  However, it says nothing about <u>why</u> the ALJ made that determination.  Dr. Hough examined Plaintiff, and Dr. Blum did not, and the regulations require that, all other factors being equal, the opinion of a non-treating source is worthy of greater weight than the opinion of a non-examining source.  20 C.F.R. §§ 404.1527, 416.927; <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987).  The ALJ did not explain why

10

he did not apply the general rule. The Commissioner cites to record evidence which in her view supports that determination, but the ALJ did not make the determination, he certainly did not support it with record evidence. The court may not accept or make such a post-hoc rationalization of the evidence to support an ALJ's decision based on a rationale other than that relied upon by the ALJ. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Robinson, 366 F.3d at 1084; Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).

SSR 96-8p contains the Commissioner's explanation that ambiguities and material inconsistencies must be considered and resolved by the ALJ, and that if an ALJ rejects a medical opinion, he must explain why. The ALJ did not do so here. Social Security Rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). Remand is necessary for the Commissioner to properly evaluate the medical opinions.

Remand is necessary as discussed above, and the court need not, and will not consider Plaintiff's remaining arguments, which he may present to the Commissioner on remand. However, the court notes that the ALJ acknowledged that Dr. Barnett provided opinions, but he did not explicitly accord weight to those opinions. Therefore, on remand it will be necessary to evaluate Dr. Barnett's opinions also. Moreover, Plaintiff argues that Dr. Barnett's opinion is additional evidence supporting Dr. Hough's opinion, and the Commissioner will need to consider that argument in weighing the opinions.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent with this opinion.

Dated this 30th day of March 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**